UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALTA PARTNERS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> ENERGY VAULT HOLDINGS, INC., and ENERGY VAULT, INC. <br><br> Defendants. | Case No. _____ |

## COMPLAINT

Plaintiff Alta Partners, LLC ("Alta") files this action against Defendant Energy Vault Holdings, Inc., and Energy Vault, Inc. (collectively, "Defendants" or "Energy Vault") for breach of contract and alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action to recover its damages incurred as a result of Energy Vault's breach of an agreement governing public warrants.

2. The public warrants at issue entitle their holders to purchase shares of Energy Vault's common stock at a "strike price" of $11.50 per share, subject to the satisfaction of certain conditions precedent.

3. At all times relevant hereto, Alta owned public warrants in Energy Vault.

4. One condition precedent to the exercise of the public warrants was that the shares of common stock issuable upon exercise of the public warrants needed to be registered under the Securities Act of 1933, as amended (the "Securities Act") *via* a registration statement filed with, and declared effective by, the U.S. Securities & Exchange Commission ("SEC").

5. In the warrant agreement, Energy Vault agreed to use "commercially reasonable efforts" to file such a registration statement with the SEC "as soon as practicable," to cause the registration to become effective, and to maintain the effectiveness of the registration statement until the expiration of the public warrants.

6. Energy Vault breached this obligation. Specifically, while Energy Vault could (and should) have registered the shares underlying the public warrants on its Form S-4 Registration Statement filed with the SEC in October 2021 (the "Form S-4"), it chose not to do so. Instead, it only registered the shares on its Form S-1 Registration Statement filed months later in February 2022 (the "Form S-1").

7. Worse yet, rather than using commercially reasonable efforts to cause the Form S-1 to become effective, Energy Vault deliberately delayed the effective date of the Form S-1 by rescinding its request that the SEC declare the Form S-1 effective, and instead filing multiple amendments to the Form S-1. As a result of the filing of these amendments, the SEC did not declare the Form S-1 effective until May 6, 2022.

8. Energy Vault's failure to use commercially reasonable efforts to register the shares issuable upon exercise of the warrant shares "as soon as practicable" prevented Alta from exercising its public warrants when shares of Energy Vault's common stock were trading well above the strike price of the public warrants, resulting in hundreds of thousands of dollars in damages to Alta, while at the same time benefiting Energy Vault and its insiders.

9. Accordingly, Alta now seeks to recover its damages from Energy Vault.

**PARTIES**

10. Plaintiff Alta Partners, LLC is a limited liability company. Alta's sole member, Steven Cohen, is a resident of and domiciled in Puerto Rico.

-2-

11. Upon information and belief, Defendant Energy Vault Holdings Inc. is a Delaware corporation with its principal place of business located in Westlake Village, California.

12. Upon information and belief, Defendant Energy Vault, Inc. is a Delaware corporation with its principal place of business located in Westlake Village, California.

## JURISDICTION AND VENUE

13. Subject matter jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Alta and Energy Vault, and the amount in controversy substantially exceeds $75,000.

14. This Court may exercise personal jurisdiction over Energy Vault and venue is proper in this District pursuant to 28 U.S.C. § 1391 based on the terms of the Warrant Agreement (defined below). In Section 9.3 of the Warrant Agreement, Energy Vault agreed "that any action, proceeding or claim against it arising out of, or otherwise based on, this Agreement shall be brought and enforced in the courts of the State of New York or the United States District Court for the Southern District of New York, and irrevocably submit[ted] to such jurisdiction, which jurisdiction shall be exclusive." Energy Vault further "waive[d] any objection to such exclusive jurisdiction and that such courts represent an inconvenient forum."

## FACTS

**The Warrant Agreement**

15. As noted above, Alta brings this action to remedy Energy Vault's breach of a Warrant Agreement dated February 3, 2021 between Novus Capital Corporation II ("Novus") and Continental Stock Transfer & Trust Company (the "Warrant Agreement"). A true and correct copy of the Warrant Agreement is attached hereto as **Exhibit A**.

16. Novus was a publicly-traded special purpose acquisition company ("SPAC") formed for the purpose of identifying a non-public target company to merge with and take public.

17. Pursuant to the Warrant Agreement, Novus issued warrants to public investors, each entitling the warrant holder to purchase one share of common stock for $11.50 per share (the "Public Warrants").

18. Under Section 3 of the Warrant Agreement, the Public Warrants were to become exercisable 30 days after the closing of a business combination between Novus and a target company, provided that a registration statement under the Securities Act of 1933, as amended, with respect to the shares of common stock underlying the Public Warrants (the "Warrant Shares") was then effective, and a prospectus relating thereto was current.

19. Under Section 7.4 of the Warrant Agreement, Novus agreed that "as soon as practicable, but in no event later than twenty (20) Business Days after the closing of its initial Business Combination," it would "use its commercially reasonable efforts to file with the [U.S. Securities and Exchange Commission ("SEC")] a registration statement for the registration, under the Securities Act of the shares of Common Stock issuable upon exercise of the Warrants." Novus also agreed to use "commercially reasonable efforts to cause the same to become effective and to maintain the effectiveness of such registration statement, and a current prospectus relating thereto, until the expiration of the [Public] Warrants."

**The Business Combination**

20. On September 9, 2021, Novus and Energy Vault announced a business combination (the "Business Combination").

21. In anticipation of the closing of the Business Combination, Novus filed the Form S-4 in October 2021 registering shares of common stock that would be issued as part of the merger. The Form S-4 was declared effective by the SEC in January 2022.

22. However, although it registered other shares of common stock on the Form S-4, Novus *did not register the Warrant Shares*.

23. On February 11, 2022, Novus and Energy Vault completed their Business Combination.

24. As a result of the Business Combination, Energy Vault assumed Novus' obligations under the Warrant Agreement.

25. In particular, under Section 4.4 of the Warrant Agreement, the terms of the Warrant Agreement were automatically modified upon the close of the Business Combination to convert the Public Warrants' issuer from Novus to Energy Vault. Thus, as a result of the Business Combination, the Public Warrants automatically represented a right to acquire one share of Energy Vault (rather than Novus) common stock on the terms and conditions set forth in the Warrant Agreement.

**Energy Vault's Failure to Use Commercially Reasonable Efforts to Register the Warrant Shares as Soon As Practicable**

26. Based on the closing date of the Business Combination and the terms of the Warrant Agreement, the Public Warrants could have become exercisable as early as March 13, 2022.

27. However, despite the clear obligations in the Warrant Agreement, Novus and Energy Vault made no attempt to register the Warrant Shares before the closing of the Business Combination, including on the Form S-4. (Inexplicably, Energy Vault's represented in filings made with the SEC on and after May 16, 2022, including in its Form 10-Q for the quarterly period ended March 31, 2022, that the "warrants became exercisable on March 13, 2022.")

28. Under applicable SEC regulations, as well as the instructions for the Form S-4, Novus and/or its successor Energy Vault could have registered the Warrant Shares on the Form S-4.

29. Specifically, 17 C.F.R. § 239.25 provides that a Form S-4 may be used for offerings of securities to be issued "in a transaction of the type specified in paragraph (a) of Rule 145." Rule 145(a) covers an "offer, offer to sell, offer for sale, or sale" of securities related to a "merger or consolidation" in which securities of a corporation or other person "will become or be exchanged for securities" of another corporation or person. 17 C.F.R. § 230.145(a)(2).

30. Securities Act Rule 415, in turn, states that "securities which are to be issued in connection with business combination transactions" may be offered "on a continuous or delayed basis," which can occur before the closing of the business combination. 17 C.F.R. § 230.415(a)(1)(iii) and (viii).

31. The instructions for Form S-4 expressly incorporate these rules.

32. Thus, because the Public Warrants issued by Novus (which entitled the holder to purchase shares of Novus) would become, as a result of the business combination, Public Warrants to purchase shares of the post-combination company (Energy Vault), the Public Warrants could have been registered on the Form S-4.

33. Further, the SEC's published interpretations of its rules make clear that the Warrant Shares *were required to be registered* on the Form S-4. The SEC's longstanding position is that an issuer is deemed to be offering, and thus must register, the securities underlying a convertible security (e.g., the shares underlying warrants) if the convertible security can be exercised within 12 months. *See* SEC Division of Corporation Finance's C&DI 139.01 (stating that if a security is convertible or exercisable into the underlying security within one year of an offering, then the

offering of both the warrant and the underlying security is deemed to be taking place and "the underlying securities must be registered at the time the offer and sale of the convertible securities are registered").

34. John Huber, one of the principal architects of Securities Act Rule 415 and Form S-4, has offered expert testimony in another federal proceeding in which he confirms that Form S-4 is "used to register the offer and sale of the warrants, the resale of the warrants, the exercise of the warrants for cash and the resulting issuance of the common stock upon exercise of the warrants, as well as the resale of such common stock." Expert Report of John J. Huber (cited hereafter as "Huber Rpt.," ECF No. 34-1, ¶ 12.A, *Tang Capital Partners, LP v. BRC Inc.*, 1:22-cv-03476-RWL (S.D.N.Y. Aug. 30, 2022); *see also* Expert Report of John J. Huber, ECF No. 57-12, *Alta Partners, LLC v. Getty Images Holdings, Inc.*, 1:22-cv-08916-JSR (S.D.N.Y. Sept. 12, 2023).

35. Despite the clear ability and requirement to register the issuance of the Warrant Shares on the Form S-4, Energy Vault did not do so. Instead, it waited until February 14, 2022 to file the Form S-1 registering the Warrant Shares.

36. After it filed the Form S-1 on February 14, 2022, Energy Vault commenced a deliberately calculated scheme to delay registration of the Warrant Shares until the last possible moment before the Public Warrants became exercisable on a cashless basis based on the Warrant Agreement.

37. Specifically, by letter dated February 23, 2022, the SEC advised Energy Vault that it had not and would not review the Form S-1, and referred Energy Vault to the procedures for requesting acceleration of the effective date of the Form S-1.

38. By letter dated March 8, 2022, Energy Vault then requested that the SEC declare the Form S-1 effective at 9:00am Eastern Time on March 10, 2022.

39. However, before the SEC could take action, Energy Vault filed Amendment No. 1 to the Form S-1 on March 8, 2022 and by letter dated March 9, 2022, Energy Vault revoked its request for acceleration of the effective date of the Form S-1.

40. It then filed two further amendments to the Form S-1 before asking that the SEC declare it effective by May 6, 2022. This was just before the Public Warrants would have become exercisable on a cashless basis.

41. The SEC declared the Form S-1 effective on Friday, May 6, 2022 at 5:30 pm ET. As a result, the Public Warrants became exercisable for cash as of Monday, May 9, 2022.

42. Had Energy Vault and Novus registered the Warrant Shares earlier, Alta and other warrant holders would have been able to exercise the Public Warrants for cash between March 13, 2022 and May 9, 2022. During this period, shares of Energy Vault's common stock were trading much higher than the strike price of the Public Warrants.

43. For example, on or about May 2, 2022, Alta owned 215,813 Public Warrants, and was ready, willing, able, and intended to exercise the Public Warrants had they been exercisable.

44. But by the time the Form S-1 was declared effective and the Public Warrants could be exercised on a cash basis, shares of Energy Vault's common stock were trading at a lower price and the Public Warrants were no longer "in the money."

45. The delay in registering the Warrant Shares therefore deprived Alta and other warrant holders from exercising the Public Warrants when shares of Energy Vault were trading well above the strike price, resulting in hundreds of thousands of dollars in damages to Alta.

46. Upon information and belief, Energy Vault strategically timed its filing and efforts to achieve effectiveness of the Form S-1 to allow insiders at Energy Vault Holdings to profit from

earnout targets while avoiding the potential dilution that would come from the exercise of the Public Warrants.

47. Upon information and belief, Energy Vault insiders received a first earnout of shares if the Energy Vault share price stayed above $12.50 per share for a period of twenty out of thirty trading days following the announcement of a PIPE transaction that closed concurrently with the Business Combination.

48. Upon information and belief, Energy Vault insiders received a second earnout of shares if the Energy Vault share price stayed above $15.00 per share for a period of twenty out of thirty trading days following the announcement of a PIPE transaction that closed concurrently with the Business Combination.

49. Had Energy Vault and/or Novus registered the Warrant Shares earlier, Alta and other warrant holders would have been able to exercise the Public Warrants for cash between March 13, 2022 and May 9, 2022, resulting in millions of additional shares of Energy Vault entering the market, drastically increasing Energy Vault's float and suppressing Energy Vault's share price.

50. The potential that holders of Public Warrants might exercise their warrants therefore stood as a potential obstacle to Energy Vault's insiders meeting their earnout targets.

## COUNT I:  Breach of Contract

51. Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

52. The Warrant Agreement is an enforceable contract that Energy Vault expressly assumed.

53. Alta performed, or was excused from performing, its obligations under the Warrant Agreement.

54. Pursuant to the clear and unambiguous terms of the Warrant Agreement, Energy Vault was required to use "commercially reasonable efforts" to file a registration statement for the registration under the Securities Act of the Warrant Shares with the SEC "as soon as practicable," to cause the registration to become effective, and to maintain the effectiveness of the registration statement until the expiration of the public warrants.

55. Energy Vault materially breached these obligations by, among other things, (1) failing to make any effort, much less commercially reasonable efforts, to register the issuance of the Warrant Shares on the Form S-4 despite the clear ability and obligation to do so; and (2) deliberately delaying the filing and effective date of the Form S-1.

56. Upon information and belief, Energy Vault's failure to register the issuance of the Warrant Shares on the Form S-4, and its deliberate scheme to delay the filing and effective date of the Form S-1 was done for the benefit of its insiders. Among other things, the delay allowed Energy Vault additional time to reach earnout targets without the downward pressure on Energy Vault's share price that would have occurred had the Public Warrants been exercisable.

57. Additionally, pursuant to the terms of the Warrant Agreement, Energy Vault was required to use its commercially reasonable efforts to file and maintain a current prospectus relating to its registration statement registering the issuance of the Warrant Shares.

58. To the extent the Form S-4's prospectus ceased being "current" under the Warrant Agreement at any time prior to May 9, 2022, Energy Vault could have, among other things, filed one or more Rule 424(b)(3) prospectus supplements to bring the prospectus current.

59. As a direct and proximate result of Novus and Energy Vault's breaches of the Warrant Agreement, Alta suffered hundreds of thousands of dollars in damages by virtue of being

deprived of the opportunity to exercise its Public Warrants when it would have been profitable to do so.

60.     Alta subsequently mitigated its damages by selling off the bulk of its warrants, or otherwise exercising out of the remainder of its position when it was permitted to do so.

**COUNT II:   Breach of the Implied Covenant of Good Faith and Fair Dealing**

61.     Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

62.     The Warrant Agreement contains an implied covenant of good faith and fair dealing, obligating the parties to implement the Warrant Agreement as intended and barring them from taking actions to undercut the Warrant Agreement's purpose.

63.     Energy Vault breached its duty of good faith and fair dealing by taking deliberate steps designed to impede and prevent Alta's right under the Warrant Agreement to exercise its Public Warrants. In particular, Energy Vault took the following actions:

   a. Failing to register the issuance of the Warrant Shares on the Form S-4;

   b. If applicable, failing to file and maintain a current prospectus in connection with a registration statement registering the issuance of the Warrant Shares;

   c. Rescinding its request that the SEC declare the Form S-1 effective by March 10, 2022, and instead filing three separate amendments to the Form S-1; and

   d. Deliberately delaying the effective date of the Form S-1 to allow its insiders to achieve their earnout targets prior to the Public Warrants becoming exercisable.

64.     Energy Vault's breaches of its duty of good faith and fair dealing have had the effect of destroying or injuring Alta's right to receive the fruits of the Warrant Agreement. In

particular, Energy Vault's actions impeded and prevented Alta from exercising its Public Warrants at a time when it would have been profitable to do so.

65. Energy Vault has acted intentionally and knowingly to deprive Alta of the fruits of the Warrant Agreement.

66. As a direct and proximate consequence of Energy Vault's breaches of the implied covenant of good faith and fair dealing, Alta suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant as follows:

A. Awarding general and compensatory damages to Alta in an amount to be determined at trial;

B. Awarding Alta costs and disbursements, including attorney's fees, related to this dispute;

C. Prejudgment and post-judgment interest; and

D. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues that are so triable.

-13-

Dated: April 23, 2025
      Hartford, Connecticut

PLAINTIFF, ALTA PARTNERS, LLC

By: */s/ Jeffrey Mueller*
    Jeffrey Mueller
    Matthew Letten
    Day Pitney LLP
    225 Asylum Street
    Hartford, Connecticut 06103
    T: (860) 275-0100
    F: (860) 275-0343
    jmueller@daypitney.com
    mletten@daypitney.com

    Gregory Bruno
    Day Pitney LLP
    605 Third Avenue, 31st Floor
    New York, NY 10158
    T: (212) 297-2452
    F: (212) 602-0092
    gbruno@daypitney.com

    *Attorneys for Plaintiff Alta Partners LLC*