USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/12/2025

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ALTA PARTNERS, LLC,

                Plaintiff,

      - against -

ENERGY VAULT HOLDINGS, INC. and ENERGY
VAULT, INC.,

                Defendants.

**25 CV 3371 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

In this action, plaintiff Alta Partners, LLC ("Alta") alleges that defendants Energy Vault Holdings, Inc. and Energy Vault, Inc. (collectively, "Energy Vault") breached an agreement governing certain transactions regarding public warrants. (See "First Amended Complaint" or "AC," Dkt. No. 14.) Alta asserts a claim for breach of contract and requests an award of general and compensatory damages. (See AC at 12.) Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), Energy Vault now moves to dismiss the claim. (See "Motion" or "MTD," Dkt. No. 21.) For the reasons set forth below, Energy Vault's motion is **DENIED.**

1

## I.   BACKGROUND[1]

On February 3, 2021, Novus Capital Corporation II ("Novus") – a publicly traded special-purpose acquisition company – entered into a warrant agreement (the "Agreement") with Continental Stock Transfer & Trust Company. (See AC ¶¶ 15-16; "Agreement," Dkt. No. 1, Ex. A.) Pursuant to the terms of the Agreement, Novus issued warrants to investors, allowing them to purchase one share of Novus common stock for $11.50 per share. (See AC ¶ 17; Agreement at 1.) Novus was obligated to file a registration statement with the U.S. Securities and Exchange Commission ("SEC") for the registration "of Common Stock issuable upon exercise of the Warrants" no later than twenty business days after the closing of a business combination and was further obligated to use "commercially reasonable efforts" to cause the registration statement to become effective within sixty business days. (Id. ¶ 19; Agreement § 7.4.1.)

On September 9, 2021, Novus and Energy Vault announced a business combination pursuant to which Energy Vault assumed Novus's obligations under the Agreement. (See AC ¶¶ 20, 24.)

---

[1] Except as otherwise noted, the following background derives from the First Amended Complaint. (See Dkt. No. 14.) The Court takes all facts alleged therein as true and construes the justifiable inferences arising therefrom in the light most favorable to Alta, as required under the standard set forth in Section II below.

The parties completed the transaction on February 11, 2022. (See id. ¶ 23.) Energy Vault filed a Form S-1 registering the warrant shares on February 14, 2022. (See id. ¶ 35.) On February 24, 2022, Alta – which held some of the public warrants - emailed Energy Vault to confirm that the warrants would become exercisable on March 13, 2022. (See id. ¶ 44.) Energy Vault acknowledged receipt of the email but did not provide a substantive response. (See id.) On March 30, 2022, Alta asked the transfer agent if Alta would be able to exercise its warrant position "immediately after the Form S-1 was declared effective," and the transfer agent confirmed that the warrants "could not be exercised until the Form S-1 was declared effective." (Id. ¶ 45.) The Form S-1 became effective on May 6, 2022, and the warrants qualified to be exercised on May 9, 2022. (Id. ¶ 41.)

Alta alleges that Energy Vault failed to use commercially reasonable efforts to "achieve effectiveness of the Form S-1" and "strategically timed its filing" to enable Energy Vault insiders to earn a profit. (Id. ¶ 50.) Alta contends that because it was not able to exercise its warrants before May 9, 2022, it was unable to exercise them "when shares of Energy Vault were trading well above the strike price, resulting in hundreds of thousands of dollars in

damages." (Id. ¶¶ 46, 49.) Alta specifically alleges (1) that it owned 215,813 warrants "on or about May 2, 2022" and "was ready, willing, able, and intended to exercise the [warrants] had they been exercisable" (id. ¶ 47); and (2) that it "would have been able to exercise the [warrants] for cash between March 13, 2022[,] and May 9, 2022" (id. ¶ 53).

On April 23, 2025, Alta filed its complaint in this action, which it amended on August 14, 2025. (See Dkt. No. 1; First Amended Complaint.) Alta alleges, in part, that Energy Vault breached the parties' Agreement by failing to use "commercially reasonable efforts" to file a registration statement "as soon as practicable," resulting in damages to Alta "by virtue of [its] being deprived of the opportunity to exercise [the warrants] when it would have been profitable to do so." (See AC ¶¶ 58, 63.)

On August 28, September 9, and October 3, 2025, the parties exchanged pre-motion letters pursuant to this Court's Individual Practice II.B. (See Dkt. No. 17.) On October 30, 2025, Energy Vault filed its motion to dismiss (see Motion), supported by a memorandum of law. (See "Mem.," Dkt. No. 22.) On November 14, 2025, Energy Vault filed an opposition. (See "Opp'n," Dkt. No. 23.) On November 21, 2025, Alta filed a reply. (See "Reply," Dkt. No. 24.)

4

## II.  **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020) (quoting Twombly, 550 U.S. at 556); see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

In determining whether a complaint states a claim that is plausible, courts must "give no effect to assertions of law or to legal conclusions couched as factual allegations but [must] accept as true the factual allegations of the complaint and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." Anderson News, L.L.C. v. American Media, Inc.,

5

680 F.3d 162, 185 (2d Cir. 2012) (cleaned up); see Iqbal, 556 U.S. at 678. In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." Doe v. N.Y. University, No. 20-CV-1343, 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (citation omitted).

## III. **DISCUSSION**

Alta alleges that Energy Vault breached the parties' Agreement by, in part, failing to make "commercially reasonable efforts" "to register the issuance of the Warrant Shares . . . despite the clear ability and obligation to do so," causing Alta to accrue damages "by virtue of being deprived of the opportunity to exercise" its warrants at a profitable time. (AC ¶¶ 58-59, 63.) The Court finds that Alta's allegations adequately support a breach of contract claim.

"A complaint for breach of contract under New York law need allege only: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." Kalimantano GmbH v. Motion in Time, Inc., 939 F. Supp. 2d 392, 414 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). "In a contract action, the court's general

6

objective should be to give effect to the intentions of the parties in entering into the agreement." Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990). Where a contract is "unambiguous on its face, its proper construction is a question of law." Id. at 889; see also PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir. 1996) ("[W]here the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law, and a claim turning on that interpretation may thus be determined . . . by [a motion to dismiss]." (internal quotations marks and citation omitted)).

Energy Vault argues that because Alta never exercised – or attempted to exercise – the warrants, Alta fails to sufficiently support its damages claim. (See Mem. at 2, 7.) Energy Vault further asserts that Alta cannot plausibly rely on the futility doctrine, under which a party "is relieved from the performance of futile acts or conditions precedent" when "it becomes clear that one party will not live up to a contract." (See Mem. at 12-13); Tang Capital Partners, LP v. BRC Inc., 757 F. Supp. 3d 363, 414 (S.D.N.Y. 2024). According to Energy Vault, that doctrine "does not absolve Alta from alleging that it took steps to exercise its warrants." (Reply at 4.) Alta acknowledges that it did not file a formal notice

of exercise for the warrants but asserts that the futility doctrine is applicable because "Energy Vault had already made clear - both in public filings and communications from its transfer agent - that the warrants were not exercisable." (Opp'n at 6.)

Energy Vault points the Court to a recent decision in this District involving Alta as the plaintiff - Alta Partners, LLC v. BitFuFu Inc., No. 24-CV-6849, 2025 WL 2145557, at *6 (S.D.N.Y. July 29, 2025) - in which the futility doctrine as applied to two categories of warrants resulted in opposing outcomes. There, Alta alleged, as it has here, that the defendant breached the parties' contract by failing "to take the necessary steps to allow warrant holders to exercise their purchase rights." Id. at *1. The court denied the defendant's motion to dismiss as it related to the warrants Alta owned, finding that Alta's allegations "fit comfortably within" the futility exception. Id. at *6.

In BitFuFu, the defendant argued that the exception did not apply because "Alta failed to surrender" its warrants "and did not make a complete payment" for the shares. Id. The court explained, however, that "Alta submitted multiple Notices of Exercise on March 4, 2024" and that the transfer agent "repeatedly affirmed that it lacked the requisite

authority to process Cash Exercises." Id. Further, in addition to the multiple notices, Alta also "sent a demand letter to [the defendant's] counsel in the afternoon of March 4, arguing that the Warrants 'were presently exercisable.'" Id. In light of the transfer agent's "repeated assertions that it lacked the ability to permit Cash Exercises," the court found that "it would be unreasonable to require Alta to have incurred the financial risk of surrendering its Warrants and making full payment for the Warrant Shares in order to preserve a claim for breach of contract." Id.

Although the BitFuFu court found that the futility doctrine saved Alta's claim as to the warrants it owned, the court held that Alta lacked a "plausible cause of action for breach of contract" as to a second group of warrants that a separate entity – NAIM - owned but had subsequently assigned to Alta any related causes of action. Id. at *8. The court found that Alta could not rely on the doctrine of futility for the second group of warrants in part because, unlike the first group of warrants, Alta never attempted to exercise them. Id. Despite Alta alleging that it "would have submitted a notice of exercise" and "had the capital necessary," the court reasoned that Alta offered "no factual support" that it "would have exercised" the warrants on March 4. Id. The court

further found that the complaint lacked allegations that "NAIM ever inquired about the possibility of exercising its Warrants on that day or took any other steps toward that goal, such as preparing or submitting any notices of exercise or taking other actions suggestive of an intent to exercise its Warrants." Id. Although the court explained that it was "not suggest[ing] that any particular facts would be necessary to state a plausible theory of damages, at a minimum, Alta must allege 'some facts' tending to show that NAIM would have exercised its Warrants at the relevant time." Id.

Here, Alta contends that it "has alleged precisely the sorts of facts that the District Court found missing" in BitFuFu and that those facts are sufficiently "suggestive of an intent to exercise its Warrants." BitFuFu, 2025 WL 2145557, at *8; (Opp'n at 10). As noted, Alta alleges that it owned 215,813 warrants "on or about May 2, 2022" and "was ready, willing, able, and intended to exercise the [warrants] had they been exercisable." (AC ¶ 47.) Alta additionally asserts that it contacted Energy Vault on February 24, 2022, to confirm that the warrants would become exercisable on March 13, 2022 (see id. ¶ 44) and asked the transfer agent on March 30, 2022, if the warrants would be exercisable "immediately after the Form S-1 was declared effective." (Id. ¶ 45.) Alta

states that the transfer agent confirmed that the warrants "could not be exercised until the Form S-1 was declared effective." (Id.)

Energy Vault argues that BitFuFu stands for the proposition that a warrant holder must attempt to exercise its warrants on a particular day and that Alta's failure to do so is dispositive. (See Reply at 2.) While the BitFuFu court did find that it was "not enough for Alta simply to allege that . . . NAIM's full performance of its obligations under the Agreement would have been 'futile,'" the Court declines to adopt Energy Vault's narrow interpretation of that language. Although bare assertions of futility cannot suffice, here, Alta adequately pleads facts to support why the doctrine applies and also alleges facts sufficient to show damages.

First, Alta asserts that in the instant matter, unlike the circumstances presented in BitFuFu, "Alta had already been told by the transfer agent that any notice of exercise would be rejected." (Opp'n at 11.) Alta relies, in part, on Tang, 757 F. Supp. at 414, for the proposition that "it would have been futile" to take additional steps when it expected that any attempted exercise of its warrants would be rejected. (Opp'n at 6-7.) In Tang, the court found that attempting to

exercise a second tranche of warrants would have been a futile "formality" because the plaintiff's attempt to exercise its first tranche was rejected.

Energy Vault argues – and Alta concedes – that, here, Alta never attempted to exercise any of its warrants at all. (See Mem. at 12-13; Opp'n at 11.) Nevertheless, the Court is not persuaded that this fact renders Alta's claim meritless. In BitFuFu, NAIM made no attempt to exercise its warrants despite its claims that it would have exercised them on a particular day. See BitFuFu, 2025 WL 2145557, at *8. Energy Vault notes that "that was the very same day Alta had been told it would not be able to exercise its other warrants." (Reply at 5.) But the BitFuFu court inferred that the assignment of NAIM's claims to Alta "occurred at some point after" that date, id. at *3 n.3, and there is no indication that NAIM was privy to the transfer agent's "repeated assertions" to Alta that it "lacked the ability to permit Cash Exercises." Id. at *6. Here, by contrast, Alta received information that the warrants "could not be exercised until the Form S-1 was declared effective." (AC ¶ 45.)

Therefore, although Alta never attempted to exercise its warrants as the plaintiff did in Tang, the Court finds that the factual circumstances here fit comfortably within the

Tang court's analysis. The dispositive issue is not whether Alta attempted to exercise its warrants but whether "[g]oing through the formality of attempting to exercise" the warrants "arguably would have been futile." Tang, 757 F. Supp. at 414. Here, as in Tang, Alta knew that any attempt to exercise its warrants would fail. Therefore, the futility doctrine applies.

Next, in support of its damages claim, Alta asserts that because it was not able to exercise its warrants before May 9, 2022, it was unable to exercise them "when shares of Energy Vault were trading well above the strike price, resulting in hundreds of thousands of dollars in damages" – specifically alleging that it "would have been able to exercise the [warrants] for cash between March 13, 2022 and May 9, 2022." (Id. ¶¶ 46, 49, 53.) Alta further alleges that it owned 215,813 warrants "on or about May 2, 2022" and "was ready, willing, able, and intended to exercise the [warrants] had they been exercisable." (Id. ¶ 47.) Energy Vault argues that those factual allegations are too speculative, and without a "date-specific attempt" to exercise the warrants, Alta cannot sustain a claim for damages. (Opp'n at 9.)

As the BitFuFu court held, however, no "particular fact[]" is necessary to state a plausible theory of damages

– "at a minimum, Alta must allege '*some* facts' tending to show that [it] would have exercised its Warrants at the relevant time." BitFuFu, 2025 WL 2145557, at *8. Here, the Court finds that Alta's relevant inquiries – to Energy Vault and to the transfer agent (see AC ¶¶ 44-45) - are sufficient to support its claim at the motion to dismiss stage and that its assertions amount to more than mere "conclusory allegation[s] that the [defendants'] breach caused damages." Comfort Inn Oceanside v. Hertz Corp., No. 11-CV-1534, 2011 WL 5238658, at *8 (E.D.N.Y. Nov. 1, 2011); see also Kapsis v. American Home Mortgage Servicing Inc., 923 F. Supp. 2d 430, 450 (E.D.N.Y. 2013) ("A plaintiff is not obligated to show, on a motion to dismiss, that it actually sustained damages and need only plead allegations from which damages attributable to defendant's breach might be reasonably inferred." (cleaned up)). Accordingly, the Court declines to dismiss Alta's breach of contract claim under the theory that it has failed to sufficiently allege damages.

## IV.  ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 21) filed by defendants Energy Vault Holdings, Inc. and Energy Vault, Inc.

14

(collectively, "Energy Vault") to dismiss the complaint (Dkt.
No. 14) of Alta Partners, LLC ("Alta") is **DENIED.**


**SO ORDERED.**

Dated:     12 December 2025
           New York, New York

Victor Marrero
U.S.D.J.